**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Games2U, Inc., | No. MC-13-00053-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Game Truck Licensing, LLC, | |
| Defendant. | |

Pending before the Court is Non-Party Sandra L. Etherton's Motion to Quash or Modify Subpoena, (Doc. 1). For the reasons specified below, the Court grants the Motion.

## BACKGROUND

Plaintiff Games2U, Inc. ("G2U") filed a patent infringement suit against Defendant Game Truck Licensing LLC ("GTL") in the Western District of Texas on March 13, 2012. (*See Games2U, Inc. v. Game Truck Licensing, LLC,* 1:12-cv-022-LY, Doc. 1.) In response to G2U's Amended Complaint ("Complaint"), GTL filed a counterclaim against G2U alleging patent infringement. (*Id.*, Doc. 24.)

As GTL's patent counsel, Non-Party Movant Sandra L. Etherton prepared GTL's application for the patent-in-suit, U.S. Patent No. 8,029,368 (the "'368 patent"). (Doc. 1 at 1.) The patent relates to a method for entertaining event attendees with a mobile multi-user video game system typically installed in a trailer. (*Id.* at 1–2.) On June 19, 2013, G2U served a Rule 45 subpoena on Etherton in this District requesting documents and testimony. (*See* Doc. 1, Ex. 1.) Etherton moved to quash or modify the subpoena on July

3. (Doc. 1.)

## DISCUSSION

### I. LEGAL STANDARD

"Unless otherwise limited by court order, . . . Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26. In order to obtain discovery, a party may, through the clerk of the appropriate district, issue a subpoena pursuant to Rule 45. On timely motion, however, the issuing court must quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies; or subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(iii)–(iv).

### II. ANALYSIS

#### A. Meet and Confer

Local Rule 7.2(j) states that "[a]ny discovery motion brought before the Court without personal consultation with the other party and a sincere effort to resolve the matter, may result in sanctions" and requires the moving party to attach a certification that such an effort was made.

G2U asserts and Etherton concedes that she did not meet and confer with G2U before filing this Motion. In this Court, however, the meet-and-confer obligation only attaches to discovery disputes between the Parties. (*See* Case Management Order for Judge Snow ¶ 6 available at http://www.azd.uscourts.gov/.) Motions to oppose subpoenas served on non-parties are not subject to the meet-and-confer obligation. Therefore, Etherton was not required to confer with G2U before filing the Motion.

#### B. Timeliness

Rule 45 states that:

A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises--or to producing electronically stored information in the form or forms requested. The objection must be

> served *before the earlier of the time specified for compliance or 14 days after the subpoena is served*.

Fed. R. Civ. P. 45(c)(2)(b) (emphasis added). G2U argues that Etherton did not timely object to the subpoena. Etherton filed this Motion within 14 days of the subpoena. Filing a motion to quash or modify a subpoena under Rule 45(c)(3) is another route through which a party may state its objections. A party is not required to both serve objections under subsection (c)(2)(b) and a motion to quash on the serving party under subsection (c)(3) that state the same objections. Hence, Etherton complied with the Rules in opposing the subpoena.

### C. Standing

Etherton, patent counsel for GTL, brings this Motion to quash or modify the subpoena on the basis of attorney-client privilege and work-product protection. "[I]t is universally accepted that the attorney-client privilege may be raised by the attorney." *Fisher v. U.S.*, 425 U.S. 391, 402 n.8 (1976) (internal citations omitted). Therefore, Etherton has standing to bring this Motion.

### D. Documents Requests

#### 1. Overbreadth

Etherton challenges the following documents requests contained in G2U's subpoena:

> Documents. You are requested to produce the following documents and permit their inspection and copying, or produce a suitable copy thereof:
>
>> Documents in support of the contention that the '368 patent is valid and enforceable, including but not limited to literature reviews, prior art searches, and any facts that support any secondary considerations of non-obvious associated with the claimed invention
>>
>> Documents, created on or before July 24, 2007, and within two years thereafter, concerning mobile entertainment environments
>>
>> Documents, created on or before July 24, 2007, and within two years thereafter, concerning the layout of the aforementioned mobile entertainment environments, said layout comprising information

> related to access and the location and composition of multiple entertainment stations with a removable gaming systems, e.g., X-Box, PlayStation, Wii, etc., with displays
>
> Documents, created on or before July 24, 2007, and within two years thereafter, concerning the connectivity and networking of the multiple entertainment stations over a network such that the following playing scenarios may occur:
>
>> Player 1 can play Game 1 on Removable Gaming System 1;
>>
>> Player 2 can play Game 2 on Removable Gaming System 2;
>>
>> Player 1 and Player 3 can play Game 1 on Removable Gaming System 1; and
>>
>> Player 1, Player 2, and Player 3 can play Game 2 together– Player 1 and Player 3 use Removable Gaming System 1 and Player 2 uses Removable Gaming System 2
>
> Documents concerning prior art related to U.S. Patent No. 8,029,368

(Doc. 1, Ex. 1 (Sched. A) [internal alterations omitted].) In its Response to the Motion, G2U limits its documents requests to relevant, non-privileged, and non-work product protected documents. For example, G2U states that it seeks production of the prior art and technical documents used in preparation of the patent-in-suit, not the communications with GTL about the art. But such limiting language is not present in the subpoena and the Court will not accept post-hoc characterizations of the subpoena.

Etherton argues that the language in the first paragraph describing the documents requested is vague and ambiguous. She objects to the word "support" in the context of the sentence "[d]ocuments in support of the contention that the '368 patent is valid and enforceable." Etherton contends that she would be required "to engage in a complex legal analysis and form a legal opinion in order to determine what documents in her client file are responsive" to that request. (Doc. 1 at 6.) The Court agrees. The particular language to which Etherton cites would compel her to sift through all her documents and determine whether each one "supports" the validity of the '368 patent. Although G2U provides

examples such as literature reviews and prior art searches, the list is not exclusive and does not cure the defect. In light of the confidential relationship that existed between Etherton and her client, the information sought in the subpoena is overbroad and unduly burdensome.

### 2. Attorney-Client Privilege

"The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice, . . . as well as an attorney's advice in response to such disclosures." *U.S. v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (internal citation omitted). The assurance of confidentiality promotes open attorney-client communications, which are "central to the legal system and the adversary process." *United States v. Hodge & Zweig*, 548 F.2d 1347, 1355 (9th Cir. 1977). But "[b]ecause it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Ruehle*, 583 F.3d at 607 (internal citation omitted). Typically, an eight-part test determines whether information is covered by the attorney-client privilege: "(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived." *Id.* A party asserting the attorney-client privilege has the burden of establishing the relationship and the privileged nature of the communication. *Id.*

Federal law governs the adjudication of patent infringement suits as they arise under federal statutes. *See* 35 U.S.C. §§ 271, 281. "Issues concerning application of the attorney-client privilege in the adjudication of federal law are governed by federal common law." *Ruehle*, 583 F.3d at 608. When determining whether particular written or other materials are discoverable in a patent case, "Federal circuit law applies, . . . if those materials relate to an issue of substantive patent law." *In re EchoStar Communs. Corp.*, 448 F.3d 1294, 1298 (Fed. Cir. 2006); *see In re Spalding Sports Worldwide, Inc.*, 203

F.3d 800, 803–04 (Fed. Cir. 2000) ("[A] determination of the applicability of the attorney-client privilege to Spalding's invention record clearly implicates, at the very least, the substantive patent issue of inequitable conduct."). For procedural matters that are not unique to patent issues, the Court is to apply the law of the regional circuit. *In re Regents of Univ. of California*, 101 F.3d 1386, 1390 (Fed. Cir. 1996). As discussed below, the documents in Etherton's client file that G2U seeks to discover all involve issues of substantive patent law such as patentability of the patent-at-suit and drafts of patent applications. Hence, Federal Circuit law applies to the determination of whether those materials are discoverable.

Prior art and technical documents are privileged if exchanged between an attorney and her client in the context of legal counsel. In *Spalding*, the Federal Circuit held that an invention record is privileged "as long as it is provided to an attorney for the purpose of securing primarily legal opinion, or legal services, or assistance in a legal proceeding." *Id.* (internal citation omitted). Based on the facts in that case, the court found that an invention record of a patent-in-suit submitted by the patent inventors to plaintiff's corporate legal department constituted a communication to an attorney. 203 F.3d at 805. Further, the communication was made for the purpose of obtaining legal advice as it was used to make patentability determinations. *Id.* As such, it was privileged material. *Id.*

The holding in *Spalding* is not limited to invention records but extends to all technical documents involved in patent prosecution. The defendant had argued that even if the remainder of the invention record was privileged, the portion listing prior art references should be disclosed since it did not ask for legal advice. *Id.* at 806. But the Federal Circuit did not "dissect the document" and found it sufficient that "the overall tenor of the document indicates that it is a request for legal advice or services." *Id.* The court stated that "the central inquiry is whether the communication is one that was made by a client to an attorney for the purpose of obtaining legal advice or services." *Id.* at 805. Also, privilege may attach to the communication even if a party does not "expressly

request confidential legal assistance when that request is implied." *Id. at 806*. Here, the primary consideration is the context in which prior art references were made or technical documents were shared between Etherton and GTL; for example, if made or shared in the context of "requests for legal advice on patentability or for legal services in preparing a patent application," *id.*, they are privileged.

Post-*Spalding* decisions are in accord and have held that in patent cases "[w]here client and counsel share technical information, that communication is privileged as long as it was made for the purpose of securing legal advice or legal services, or conveying legal advice." *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 480 (E.D. Pa. 2005) (citing to *Spalding,* 203 F.3d at 805 and holding that 35 technical documents were privileged); *In re Gabapentin Patent Litig.*, 214 F.R.D. 178, 182 (D.N.J. 2003) (holding that documents related to the preparation and prosecution of a patent application were privileged but communications forwarded to attorneys "clearly not intended to solicit or convey legal advice" were not); *McCook Metals L.L.C. v. Alcoa Inc.*, 192 F.R.D. 242, 252 (N.D. Ill. 2000) (holding that drafts of patent applications, technical information in memoranda, and invention control sheets implicitly contained the request or provision of legal advice and are thus privileged). For instance, where an attorney's legal advice is rendered in the form of a draft patent application, the client's communication of technical information to assist the attorney in drafting the application is "the kind of confidential communication that the privilege was intended to protect." *Gabapentin*, 214 F.R.D. at 181.

It is equally true that prior art or technical documents exchanged between an attorney and client for some reason other than legal counsel are not privileged. *See McCook Metals,* 192 F.R.D. at 255 (holding that technical drawings and documents that were sent as attachments to in-house patent attorneys in response to their request for information are not privileged). Further, the fact that technical documents are transferred, routed, or forwarded to an attorney does not change their non-privileged status. *See*

*SmithKline*, 232 F.R.D. at 478; *Gabapentin*, 214 F.R.D. at 186.

### 3. Work Product Doctrine

In contrast to the attorney-client privilege, the work-product doctrine can protect documents and tangible things that are both non-privileged and relevant if prepared in anticipation of litigation by or for another party or its representative. *See* Fed. R. Civ. P. 26(b)(3)(A). Courts have generally held that "work performed by an attorney to prepare and prosecute a patent does not fall within the parameters of the work product protection . . . since the prosecution of [a] patent is a non-adversarial, *ex-parte* proceeding." *In re Minebea Corp.,* 143 F.R.D. 494, 499 (S.D.N.Y. 1992); *see, e.g., Probert v. The Clorox Co.*, 258 F.R.D. 491, 497 n.7 (D. Utah 2009) *aff'd sub nom. Probert v. Clorox Co., Inc.*, 404 F. App'x 486 (Fed. Cir. 2010); *Gabapentin*, 214 F.R.D. at 184–85; *McCook Metals*, 192 F.R.D. at 260. Further*,* documents generated in connection with a patent application are not protected by the work product doctrine "simply because an issued patent may give rise to an infringement action." *Gabapentin*, 214 F.R.D. at 184 (internal citation omitted). If, however, the documents at issue were created with a dual purpose to prosecute a patent application and to prepare for litigation, they would qualify for protection under the doctrine. *Minebea,* 143 F.R.D. at 499.

### 4. Privilege Log

The above standards governing privilege and work product in the context of patent prosecution provide direction in addressing Etherton's objections. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must expressly make the claim and "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Fed. R. Civ. P. 45(d)(2)(A); *see also* Fed. R. Civ. P. 26(b)(5).

A party may make a prima facie showing that the attorney-client privilege or work-product doctrine protects information by providing a "privilege log." In *In re*

*Grand Jury Investigation*, the Ninth Circuit held that a party met its burden to demonstrate the applicability of the protections by providing a privilege log that identified the following: (1) the attorney and client involved; (2) the nature of the document (i.e., letter, memorandum); (3) all persons or entities shown on the document to have received or sent the document; (4) the date the document was generated, prepared, or dated; and (5) information on the subject matter of each document. 974 F.2d 1068, 1071 (9th Cir. 1992); *see also Dole v. Milonas,* 889 F.2d 885, 888 n.3, 890 (9th Cir. 1989) (approving of a similar list of identifiers for a privilege log). Although sufficient, this list of identifiers are neither exhaustive nor necessary to carry the burden to describe the nature of the withheld documents and enable the parties to assess the claim of privilege.

G2U contends that Etherton has not carried her burden to show that the requested documents are privileged or protected because she makes a "blanket assertion" as to her entire client file. Etherton asserts that the following description of documents in her client file and assertion of privilege contained in her declaration is sufficient:

> 9. My patent file for this matter includes the following categories of documents:
>
> Written communications from and to GTL concerning the patentability of the Invention and the preparation and prosecution of the '368 patent application;
>
> Multiple drafts of the '368 patent application;
>
> Potential prior art references that I considered in connection with advising the client regarding the patentability of the Invention;
>
> Personal notes reflecting my thoughts and analysis related to the work that I performed for GTL;
>
> The final '368 patent application that I filed;
>
> Written communications to and from the USPTO, which are included in the publicly available USPTO file for the '368 patent; and

- 9 -

> The issued '368 patent.
>
> 10. The file materials identified in the first four bulleted items are protected by the attorney-client privilege and/or work-product doctrine.

(Doc. 2, Etherton Decl.) Etherton supplements this description with another declaration describing the nature of "potential prior art references" mentioned above in the first declaration. She attests the following:

> That potential prior art consists of multiple issued United States patents and marketing materials that were printed out and placed in my physical file for this matter. Some of these items of potential prior art were provided to me by Game Truck, while other were found by me or other attorneys in my office and provided to Game Truck. The exchange of these items was for the sole purpose of providing legal advice to Game Truck regarding the patentability of the invention described in the '368 patent and advising it with respect to filing and prosecuting the patent application therefore.
>
> The individuals who sent and received the potential prior art were, on the one hand, the attorneys and staff at my office (myself, Ben Tietgen, AnnMarie Whitley, any my business manager Marci Smith), and on the other hand, Scott Novis, his assistant "Elaine" (I do not recall her last name), and David Wachtel at Game Truck. No third-parties outside the attorney-client relationship were copied on any of these communications transmitting potential prior art back and forth.

(Doc. 13-1, Etherton Decl. ¶¶ 4–8.) Through the combination of these two declarations, Etherton provides G2U and the Court with specific categories of documents in her "client file," a general description of the subject matter and nature of those documents, and the attorney, client, and/or representatives who received or sent the documents. This description of the documents provides G2U and the Court with information sufficient to evaluate her claim of privilege.

First, Etherton states that the prior art references were all exchanged between GTL and its attorney in the context of legal counsel. These documents are privileged. *See SmithKline*, 232 F.R.D. at 480; *Gabapentin*, 214 F.R.D. at 182. Etherton also lists all the parties that handled the documents to address any issues of confidentiality or waiver.

Based on that list, the documents were not shared with any third parties. The remaining categories of documents in Etherton's client file that are not public are similarly privileged. A draft patent application "necessarily reflects the communications between a client and his attorney as the attorney attempts to put forth the invention in the best light possible to protect a client's legal right" and is therefore privileged. *McCook Metals*, 192 F.R.D. at 252. Etherton's notes reflecting her thoughts and analysis related to patent prosecution are similarly privileged as they "contain the rendering of an attorney's advice for the benefit of the client as [she] drafts an application to secure a legal right for the client." *Id.* at 254.

    A "document-by-document listing" is not warranted in the context of G2U's subpoena on Etherton. The categorical approach contained in her privilege log is sufficient. In fact, she discloses most of the identifying information approved of in *Grand Jury Investigation*, 974 F.2d at 1071. In advocating a categorical approach, Etherton relies in support on *S.E.C. v. Thrasher*, 92 CIV. 6987 (JFK), 1996 WL 125661, *1 (S.D.N.Y. 1996), which is informative here. In *Thrasher*, the SEC sought "wholesale production" of all communications between defense counsel concerning the litigation. *Id.* In allowing the responding party to provide a privilege log employing a categorical approach, the court reasoned that the documents were "ordinarily covered by the work-product rule, and, if the joint-defense principle is applicable, very probably by the attorney-client privilege." *Id.* Hence, there would be no benefit to "gain from a detailed document-by-document log." *Id.* at *2.

    Like communications between defense counsel, the documents maintained by an attorney used in the context of patent prosecution are ordinarily privileged. Therefore, a more detailed privilege log is not necessary to determine which documents are protected. Etherton will not be required to individually log and identify every document in her client file as that would be unduly burdensome in response to the "wholesale production" requested by G2U. *See In re Imperial Corp. of Am.*, 174 F.R.D. 475, 479 (S.D. Cal. 1997)

(holding that "[t]o force the creation of a document-by-document privilege log of documents" of a large magnitude was unreasonable and overly burdensome when most of the documents were created by plaintiffs or their counsel as part of litigation and likely protected).

### E.     Deposition

The Federal Rules of Civil Procedure do not prohibit the deposition of a patent prosecution counsel for an opposing party. *See* Fed. R. Civ. P. 30(a)(1) ("A party may, by oral questions, depose any person . . . ."); *Shelton v. America Motors Corp.,* 805 F.2d 1323, 1327 (8th Cir. 1986). The Court may, however, issue an order to forbid deposition of a party if there is good cause to protect the party from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c)(1). A district court may also limit the frequency or extent of discovery otherwise allowed if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; [or] the party seeking discovery has had ample opportunity to obtain the information by discovery in the action. . . ." Fed. R. Civ. P. 26(b)(2)(C)(i)–(ii). "When attorney depositions are sought, courts should also consider "all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship." *Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*, 276 F.R.D. 376, 382 (D.D.C. 2011) (citing *In re Friedman,* 350 F.3d 65, 72 (2d Cir. 2003)). These considerations include "the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted." *Friedman,* 350 F.3d at 72.

Although depositions of an opposing party's counsel are generally discouraged[1],

---

[1] Such depositions are discouraged because they largely implicate attorney-client privilege and can have a negative impact on the litigation process. *See, e.g., Am. Cas. Co. of Reading, Pa. v. Krieger,* 160 F.R.D. 582, 585–89 (S.D.Cal.1995) (*citing Shelton,*

- 12 -

courts allow the deposition of patent prosecution counsel where knowledge of counsel is relevant to the deposing parties' claims or defenses, at issue in the case, and cannot be derived from other sources. *See, e.g., Ed Tobergte Associates Co. v. Russell Brands, LLC*, 259 F.R.D. 550, 556 (D. Kan. 2009); *Leviton Mfg. Co., Inc. v. Shanghai Meihao Elec., Inc.,* 613 F.Supp.2d 670, 717-18 (D. Md. 2009). Those cases usually involve a defense of inequitable conduct raised by the defendant which places at issue the knowledge and state of mind of the opposing party's patent counsel.[2] *See aaiPharma, Inc. v. Kremers Urban Dev. Co.,* 361 F. Supp. 2d 770, 776 (N.D. Ill. 2005) (allowing deposition of plaintiff's trial counsel who was substantially involved in preparation and prosecution of patent application as relevant to the affirmative defense of inequitable conduct); *Alcon Labs., Inc. v. Pharmacia Corp.*, 225 F. Supp. 2d 340, 344 (S.D.N.Y. 2002) (allowing deposition of lead trial counsel who prosecuted patent because his "mental impressions during the patent prosecution period are at issue . . . due to the inequitable conduct defense").

The subpoena requests Etherton to testify at a deposition on the following topics: (1) prosecution of the patent application for the '368 patent and (2) the '368 patent. (Doc. 1, Ex. 1 (Sched. A).) Etherton contends that G2U should not be permitted to depose her because the benefit of such a deposition is outweighed by the risk of privilege and work-product issues and there are other appropriate sources for the information. She refers to

---

805 F.2d at 1327; *Tailored Lighting, Inc. v. Osram Sylvania Products, Inc.,* 255 F.R .D. 340, 344 (W.D.N.Y. 2009).

[2] Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011). A party asserting the defense of inequitable conduct that arises from a failure to disclose prior art must offer clear and convincing proof that the patent applicant failed to disclose material prior art and intended to deceive the USPTO into granting the patent. *See Star Scientific Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008). In determining inequitable conduct, the knowledge and actions of a patent applicant's attorney are chargeable to the applicant. *Novo Nordisk Pharm., Inc. v. Bio-Technology Gen. Corp.*, 424 F.3d 1347, 1361–62 (Fed.Cir.2005)

- 13 -

and quotes at length from *Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*, 276 F.R.D. 376 (D.D.C. 2011), in which the court rejected a party's request to depose the opposing party's patent prosecution counsel. Although the court expressed the concerns that Etherton now conveys, the dispositive concern in that case was "[t]he risk that the proposed deposition would be used to uncover aspects of [the opposing party's] strategy through deposition of former [patent] counsel on a concurrently pending and identical patent matter . . . ." *Id.* at 384. The court explained that the same patent counsel had a central role in "defending before the USPTO the same [patent-in-suit] in the [current] litigation" and therefore it was "potentially privy to legal theories, thought processes and strategies underlying [the opposing party's] defense to the [patent] in both fora." *Id.* Thus, the patent prosecution counsel's role "increase[d] certain risks that the Federal Rules require courts to examine when evaluating requests for discovery." *Id.* Etherton does not argue that her prosecution of the patent-in-suit implicates a similar concern.

Nevertheless, it appears to the Court that questions during Etherton's deposition would repeatedly implicate attorney-client privilege. *See Friedman,* 350 F.3d at 72. For instance, Etherton's discussions with GTL about patentability of its invention and prior art or other technical documents shared in that context would be privileged.

It is not apparent that this deposition would lead to relevant discovery that is not available from other sources. Etherton's knowledge or state of mind is at issue in this case. Although Etherton insists that G2U is on a "fishing expedition" to discover information on which to base an inequitable conduct defense against GTL's counterclaim of patent infringement, G2U has not yet alleged such a defense in its Complaint or otherwise. (*See Games2U, Inc. v. Game Truck Licensing, LLC,* 1:12-cv-022-LY, Doc. 28, G2U's Ans. at 2–3.)

G2U states that in deposing Etherton it seeks "relevant non-privileged information regarding the validity of the patent-in-suit." (Doc. 5 at 5.) As an example, G2U refers to a discussion between Etherton and the patent examiner regarding a prior art reference and

rejections made by the examiner in a previous office action. (*See* Doc. 5-1, Ex. 1.) But that information is readily available from deposing the patent examiner and reading the USPTO interview summary that G2U attaches as Exhibit 1 to its Response to the Motion. G2U does not describe, even in general terms, other relevant information it seeks to obtain through Etherton's deposition. Thus, on balance there is not sufficient benefit from the deposition to outweigh the burden on Etherton and the risk of encountering privilege issues. The Court will quash the deposition subpoena.

**IT IS THEREFORE ORDERED** that the Motion to Quash or Modify Supboena Duces Tecum (Doc. 1) is granted.  Plaintiff's July 19, 2013, subpoena on Non-Party Sandra L. Etherton is quashed.  The Clerk of Court is directed to terminate this action.

Dated this 9th day of August, 2013.

G. Murray Snow
United States District Judge